1:20-MJ-10-PAS

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew J. Riportella, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of applications for a criminal complaint and arrest warrants for SAMSON IKOTUN ("IKOTUN") for conspiracy to commit; wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### Agent Background and Experience

2. I am a Special Agent with the FBI, and have been since 2012. I have participated in investigations relating to fraud, illegal gambling, bookmaking, extortion, kidnapping, and narcotics crimes. Many of the investigations in which I have participated were national in scope, and required me to work closely, and to share information and intelligence, with members of other law enforcement agencies.

3. As an FBI Special Agent, I have used various investigatory tools and techniques, including confidential informants, cooperating witnesses, undercover agents, physical surveillance, search warrants, telephone toll analysis, court-authorized electronic surveillance, grand jury investigations, and witness interviews. I have also participated in the execution of search warrants resulting in the seizure of ledgers and related paper work, both physical and electronic; United States

1:20-MJ-10𝜓𝛽

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

I, Matthew J. Riportella, being first duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of applications for a criminal complaint and arrest warrants for SAMSON IKOTUN ("IKOTUN") for conspiracy to commit; wire fraud in violation of 18 U.S.C. § 1343 and money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### Agent Background and Experience

2. I am a Special Agent with the FBI, and have been since 2012. I have participated in investigations relating to fraud, illegal gambling, bookmaking, extortion, kidnapping, and narcotics crimes. Many of the investigations in which I have participated were national in scope, and required me to work closely, and to share information and intelligence, with members of other law enforcement agencies.

3. As an FBI Special Agent, I have used various investigatory tools and techniques, including confidential informants, cooperating witnesses, undercover agents, physical surveillance, search warrants, telephone toll analysis, court-authorized electronic surveillance, grand jury investigations, and witness interviews. I have also participated in the execution of search warrants resulting in the seizure of ledgers and related paper work, both physical and electronic; United States

currency; records of monetary transactions; and computers, cell phones, and other electronic devices used in the conduct of illegal activity.

4. I am the case agent for this investigation. I have worked closely with other FBI special agents and law enforcement personnel, including members of the United States Postal Inspection Service (USPIS), the United States Secret Service (USSS), the Providence, Rhode Island Police Department, and numerous local police departments. Accordingly, I am familiar with the facts concerning this investigation. The facts in this affidavit come from my personal observations, my training and experience, phone and bank records, and information obtained from other agents and witnesses. This case is under investigation and not all information about the scheme is currently known to law enforcement. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## Statement of Probable Cause

5. The United States is investigating a multi-faceted fraud scheme involving a number of individuals, known and unknown, who are living in in Rhode Island and other locations (collectively "the SUBJECTS"). Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 1343 (wire fraud), and 1956(a)(1)(B)(i) (money laundering) have been committed by IKOTUN.

6. The fraud scheme under investigation takes several forms, including "romance" fraud; "grant" fraud and "online sales" fraud. The common denominator is the obtaining of funds through false pretenses and links to the SUBJECTS. In some instances the victims are directed to send the fraud proceeds directly to the SUBJECTS and/or entities controlled by the SUBJECTS; in other instances, the victims are directed to send the fraud proceeds to other victims, who are further directed to forward the fraud proceeds to the SUBJECTS; in some instances, the victims are directed to send the fraud proceeds to recipients who have yet to be identified as additional victims or as co-conspirators.

7. To date, dozens of victims have been identified by law enforcement in locations throughout the United States. Many of the fraud victims sent money to bank accounts and addresses controlled by IKOTUN. Some victims were directed to send fraud proceeds to multiple locations, which include bank accounts and addresses controlled by IKOTUN and other SUBJECTS elsewhere.

### The Subjects and His Related Entities

8. According to RI Secretary of State records, "Sam's Logistics" is an entity controlled by IKOTUN, with an address of the 254 WARREN AVENUE, East Providence, RI Apt 3 (the WARREN AVENUE PREMISES"). The WARREN AVENUE PREMISES is also IKOTUN's residence. IKOTUN opened PO BOX 41089 at the Corliss Street Post Office in the name of Sam's Logistics.

## Romance Fraud

9. One form of the fraud scheme is a romance fraud. In the "romance" fraud scheme, victims encounter a SUBJECT through an online interaction; sometimes through dating websites and applications such as match1.com, other times through interactive smart phone applications such as "Words with Friends." The SUBJECT provides false identity information and pretends to be romantically interested in the victim. The subjects pretend to be both male and female, heterosexual and homosexual, depending on the particular victim. SUBJECT frequently promises to meet the victim in person, with plans for a long term relationship, only to cancel on the eve of the meeting due to a fabricated emergency. As the SUBJECT builds trust with the victim over time, the SUBJECT begins asking for money from the victim, and sometimes gains access to the victim's financial accounts, credit cards, and PayPal accounts.

10. A forty-five year of female, from Maryland, hereinafter referred to as "CF" is a victim of a romance fraud scam. In March 2019 CF joined an online dating website. CF met a person who self-identified as "Steve Erickson Johansson." (hereinafter "JOHANSSON"). JOHANSSON claimed to live in New York and to be starting a cocoa company based in Peru. CF and JOHANSSON exchanged thousands of text messages. At some point, JOHANSSON contacted CF and said things had gone wrong on his Peru trip and asked her for help. JOHANSSON needed $19,000 in order to pay workers in Peru which would allow his deal to go

through. At first CF declined and said that was too much money to send him, but JOHANSSON was very persistent in his request and said she would be paid back as soon as the deal went through and he was paid. JOHANSSON even provided CF with his bank account information and log-in as a show of good faith. CF used the link sent to her by JOHANSSON in a text message, and logged into the account at the Bank of Lithuania. After this she felt more comfortable and trusted JOHANSSON so she wired him the money. CF's first wire transfer to JOHANSSON was for $97,000 and she wired the funds to the account JOHANSSON gave her, which he said was a business account. The additional funds above the $19,000 initially requested were for taxes that JOHANSSON said were supposed to be paid by an unknown third party that was "screwing" him. JOHANSSON reiterated he could not repay CF until the shipment went out and he got paid. JOHANSSON continually told CF that with the more money she sent him, it increased the odds of his transaction completing and her getting paid back, so she kept sending JOHANSSON money. CF sent between $500,000 and $750,000 to various entities at JOHANSSON's direction. CF stated that one of the entities she was directed to send money to was SAM'S LOGISTICS LLC. According to CF, she obtained the money by liquidating her assets and taking out loans.

5

11. According to bank records obtained from Wells Fargo and TD Bank, between April and June 2019, CF sent $280,000 in wire transfers to IKOTUN's bank account ending *2274 at TD Bank.

12. On April 18, 2019, CF transferred $60,000 to Sam's Logisitics' acct ending *2274 at TD Bank.

13. On April 25, 2019, CF transferred $50,000 to Sam's Logisitics' acct ending *2274 at TD Bank.

14. On June 7, 2019, CF transferred $70,000 to Sam's Logisitics' acct ending *2274 at TD Bank.

15. On June 13, 2019, CF transferred $100,000 to Sam's Logisitics' acct ending *2274 at TD Bank.

16. According to bank records, after each of these wire transferes, within a few days the funds were immediately depleted from the SAM's LOGISTIC's account via withdrawals. For example:

   a. On April 19, 2019, IKOTUN withdrew $7,000 cash from the account
   b. On April 22, 2019, IKOTUN withdrew $7,500 from the account
   c. On April 23, IKOTUN withdrew $5,000 from the account
   d. On April 26, 2019, IKOTUN withdrew $9,000 cash from the account
   e. On June 11, 2019, IKOTUN withdrew $9,500 cash from the account
   f. On June 12, 2019 IKOTUN withdrew $13,328 from the account
   g. On June 14, 2019 IKOTUN withdrew $32,975 from the account

    h. On June 14, 2019 IKOTUN withdrew $14,500 from the account

17. Based on my training and experience and the facts known to me in this investigation, I do not believe "JOHANSSON" is a real person, but rather a fictitious persona used by IKOTUN or other participants in the fraud to defraud of the scheme. I further believe CF's wire transfers into IKOTUN's account represent proceeds of wire fraud, and that IKOTUN's rapid depletion of the funds are indicative of money laundering transactions designed to conceal the nature, source, and location of the fraud proceeds.

Respectfully submitted,

Matthew J. Riportella
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on January \_\_\_27\_\_\_, 2020

_____
HON. PATRICIA A. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

7